**SHUMAKER MALLORY LLP**
Clarisse Young Shumaker (SBN 106505)
youngshumaker@smcounsel.com
Lisa Hiraide (SBN 206142)
Hiraide@smcounsel.com
Brett J. Wasserman (SBN 315058)
wasserman@smcounsel.com
333 S. Grand Avenue, Suite 3400
Los Angeles, California 90071
**Mailing Address:**
1 Ringbit Road West
Rolling Hills, CA 90274
Telephone: (213) 793-2020
Facsimile: (213) 674-4268

Attorneys for Plaintiffs
ROCKETFUEL BLOCKCHAIN, INC.;
ROCKETFUEL BLOCKCHAIN COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKETFUEL BLOCKCHAIN, INC., a Nevada corporation; and ROCKETFUEL BLOCKCHAIN COMPANY, a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH PAGE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-09270<br><br>**COMPLAINT FOR:**<br><br>1. **Violation of Section 10(b) of the** *Securities Exchange Act Rule 10b-5*<br>2. **Violations of** *California Corporations Code* **§§ 24501 and 25501**<br>3. **Fraud**<br>4. **Breach of Fiduciary Duty**<br>5. **Negligent Misrepresentation**<br>6. **Unjust Enrichment**<br>7. **Violation of** *California Business and Professions Code* **§ 17200, et seq.**<br>8. **Injunctive Relief under** *California Civil Code* **§ 3439.07**<br>9. **Declaratory Judgment and Injunctive Relief under** *Federal Rules of Civil Procedure* **Rule 57**<br><br>**DEMAND FOR JURY TRIAL** |

///

Plaintiffs ROCKETFUEL BLOCKCHAIN, INC . and ROCKETFUEL BLOCKCHAIN COMPANY (collectively, "Plaintiffs") allege as follows:

**PARTIES**

1.      Plaintiff ROCKETFUEL BLOCKCHAIN, INC. ("Parent") is a corporation organized and existing under the laws of the state of Nevada.  Parent is a publicly traded company formed in 1987 in Nevada, formerly known as B4MC Gold Mines, Inc. ("B4MC").  On June 27, 2018, B4MC acquired Plaintiff RocketFuel Blockchain Company in a reverse acquisition[1], after which B4MC changed its name to RocketFuel Blockchain, Inc.[2]

2.      Plaintiff ROCKETFUEL BLOCKCHAIN COMPANY ("Subsidiary") was formed on January 12, 2018 in Nevada.  At all times mentioned herein, Subsidiary was a private operating company.  The intial shareholders of Subsidiary included Defendant Joseph Page (300 Shares), Gert Funk ("Funk") (300 Shares), Henrik Rouf ("Rouf") by and through his company Pacific Wave Partners Limited ("PWP") (150 Shares), and Richway Finance Ltd. (150 Shares).  Prior to Subsidiary being acquired by B4MC (now Parent), an additional 100 Shares were sold to Saxton Capital Ltd. ("Saxton").  After

///

///

---

[1]   A reverse acquisition occurs when a public company acquires an existing private company and the shareholders of the private company receive a controlling block of the parent's stock.
[2]   RBC Parent will be referred to herein as B4MC when referring to pre-closing events.

1  Subsidiary was acquired by B4MC (now Parent) in the reverse acquisition,

2  Subsidiary became a wholly-owned subsidiary of Parent.

3      3.    Defendant JOSEPH PAGE ("Page" or "Defendant") was a co-

4  founder of Subsidiary.  At all times alleged herein Page served as an officer

5  (Treasurer) and board member of Subsidiary along with Funk and Rouf.  At all

6  times relevant herein Page was a resident of San Diego, California.  Plaintiff is

7  informed and believes and thereon alleges that Page currently resides in

8  Valbonne, France.

9      4.    Plaintiff does not presently know the true names and capacities of the

10  defendants sued herein as Does 1 through 10, inclusive.  Plaintiff will seek leave

11  of court to amend this complaint to allege said defendants' true names and

12  capacities as soon as plaintiff ascertains them.  Plaintiff is informed and believes

13  and thereon alleges that each of the fictitiously named defendants is responsible in

14  some manner for the occurrences herein alleged, and that plaintiff's damages as

15  herein alleged were proximately caused by those defendants.  Each reference in

16  this complaint to "Defendant," "Defendants," or a specifically named Defendant

17  refers also to DOES 1 through 10.

18      5.    Plaintiff is informed and believes and thereon alleges that each of the

19  Defendants is now, and has been at all times herein mentioned, the agent, servant,

20  employee, partner, associate, joint venture, co-participant, and/or principal of or

1  with each of the remaining Defendants, including the DOE Defendants, and that

2  each Defendant has been, at all times herein mentioned acting within the scope of

3  such relationship and with the full knowledge, consent, authority, ratification,

4  and/or permission of each of the remaining Defendants.

5  ## JURISDICTION AND VENUE

6      6.    The claims alleged herein arise under the *Securities Exchange Act*

7  *Rule* 10b-5 (17 C.F.R. § 240.10b-5).  This Court has subject matter jurisdiction of

8  this action pursuant to 28 U.S.C. §§ 1331 and 1337 and § 27 of the *Securities*

9  *Exchange Act of 1934*.

10      7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)

11  because a substantial part of the events and omissions giving rise to the claims

12  occurred in this district, and the agreement alleged herein was executed through

13  electronic means by Parties located in Los Angeles, San Diego and Las Vegas.

14  ## FACTS COMMON TO ALL CAUSES OF ACTION

15  ***Corporate History***

16      8.    Plaintiff Subsidiary was co-founded by Defendant and Funk for the

17  purpose of developing and bringing a highly efficient, automated and secure

18  check-out system to eCommerce based on blockchain technology.  Prior to

19  Subsidiary's formation, Defendant developed the prototype for the check-out

20  system and between 2013 and 2017 filed with the U.S. Patent and Trademark

Office ("PTO") five patent applications ("Patent Applications") and two

trademark applications ("Trademarks") as follows:

| No.[3] | U.S. Patent Application Number and Description | Filing Date |
|---|---|---|
| I | Patent Application 14/078,202 - "Commerce Systems Having Automated Delivery Feature" | 12 Nov 2013 |
| II | Patent Application 14/324,134 - "Commerce Systems Having Integrated Electronic Delivery Features" | 04 Jul 2014 |
| III | Patent Application 14/244,058 - "Commerce Systems Having Integrated Delivery Feature" | 04 Apr 2014 |
| IV | Patent Application – 14/970,404 - "Cryptocurrency Commerce User Interface Systems" | 15 Dec 2015 |
| V | Patent Application – 14/616,683 - "Cryptocurrency Commerce User Interface Systems" | 07 Feb 2015 |

| No. | U.S. Trademark and Number | Registration Date |
|---|---|---|
| I | **Hit It** – 5,034,747 | 06 Sept 2016 |
| II | **Hit It** (wordmark) - 5,030,179 | 30 Aug 2016 |

///

///

---

[3] For ease of reference the Patent Applications will be referred to herein by the corresponding roman numeral.

1  Defendant Page filed non-publication requests with the Unites Stated Patent and

2  Trademark Office, which <u>means that</u> the Patent Applications were not published

3  and not made available to the public.  Thus, all of the confidential information

4  contained therein to remain would remain confidential and not be available to

5  the public.

6        9.     <u>Assignment of Intellectual Property</u>.  In March 2018, Defendant

7  assigned the Patent Applications ("IP Portfolio") to Subsidiary, relinquishing all

8  right thereto, as consideration for the issuance of 300 shares of Subsidiary

9  common stock to Defendant.

10 ***The Reverse Acquisition***

11       10.    <u>Subsidiary's Reverse Acquisition with B4MC Gold Mines, Inc (now</u>

12 <u>Parent)</u>.  In June 2018, Subsidiary's management contemplated a reverse

13 acquisition transaction with B4MC, a publicly traded company, by which B4MC

14 acquired 100% of Subsidiary's outstanding and issued shares and Subsidiary's

15 shareholders received newly issued B4MC shares constituting 75% of the total

16 post-acquisition outstanding shares of B4MC.

17       11.    During discussions between Defendant and B4MC leading up to the

18 reverse acquisition, Defendant told Bennett Yankowitz ("Yankowitz")[4], B4MC's

19 ///

20

---

[4]    Bennett Yankowitz is a member of the California Bar (SBN 96802) and is Of Counsel to Shumaker Mallory, LLP, counsel for Plaintiffs

Chief Financial Officer, and Rouf that the Patent Applications **were pending and in the process of being examined** by the PTO. Defendant also represented that he filed assignments of the Patent Applications and Trademarks in favor of Subsidiary with the PTO. In reliance on these representations, B4MC entered into a "Contribution Agreement" with Subsidiary and its shareholders, including Defendant, Funk, PWP, PWP UK Ltd. (as successor in interest to Richway Financial Ltd.), and Saxton (Subsidiary's shareholders are hereafter collectively referred to as "Sellers") on June 27, 2018. A copy of the Contribution Agreement is attached hereto as Exhibit A and incorporated herein by reference.

12. Under the Contribution Agreement, the Sellers sold 100% of their Subsidiary shares in exchange for shares of B4MC's common stock representing 75% of B4MC's outstanding shares post-closing. Thus, at closing on June 27, 2018, Defendant received over 5,000,000 shares of B4MC, which constituted 22.5% of B4MC's (now Parent's) total outstanding shares, valued at over $45,000,000.00[5].

13. In addition, under the Contribution Agreement, Subsidiary represented and warranted with regard to the sufficiency of its assets that:

///

///

---

[5] At the time of the closing, the closing market price of the shares quoted on the OTC Pink sheets was $9.00 per share.

"The assets (including contractual rights) of [Subsidiary] [including the IP Portfolio] constitute all of the assets, rights and properties that are used in the operation of the businesses of [Subsidiary] as it is now conducted and presently proposed to be conducted or that are used or held by [Subsidiary] for use in the operation of the businesses of [Subsidiary], and taken together, *are adequate and sufficient for the operation of the businesses of [Subsidiary] as currently conducted and as presently proposed to be conducted*." Contribution Agreement §4.12 (emphasis added).

14.     B4MC Name Change.  Post-closing, B4MC changed its name to its current name, *RocketFuel Blockchain, Inc. (*herein Parent*)*.  Parent's Board of Directors was reconstituted to be comprised of Defendant, Funk, and Yankowitz. Defendant was appointed Parent's Chief Technology Officer ("CTO"), Funk was appointed Parent's CEO and Yankowitz was reappointed Parent's CFO and Secretary.

***Defendant's Demand Leads to Discovery of Defendant's Fraud***

15.     Defendant's Demands and Resignation.  On or about May 15, 2019, Defendant made a demand to Carsten Jensen ("Jensen"), the president of Saxton (one of Parent's largest shareholders), threatening to resign as a director and CTO of Parent unless three demands were met: 1) Parent paid Defendant €100,000

immediately; 2) Parent raised €4,000,000 within 90 days - out of which Defendant was to be paid €350,000; and 3) in the event that €4,000,000 was not raised within 90 days, Parent would transfer the IP Portfolio to Defendant, and only then would Defendant return the 22.5% of Parent shares back to Parent.  Defendant claimed that he was disappointed that Parent had not yet raised capital to develop the technology contained in the IP Portfolio.  Jensen forwarded Defendant's email to Funk.  Parent rejected Defendant's demands, and Defendant resigned from Parent's Board on May 29, 2019.  Despite requests by Parent, Defendant did not resign as Parent's CTO or as the Treasurer and a director of Subsidiary.

16.     On May 24, 2019, prior to Defendant's resignation from Parent's Board, Yankowitz, on behalf of Parent, wrote to Defendant reminding him that he was still an officer and significant shareholder of Parent and an officer and director of Subsidiary, and thus he owed fiduciary obligations to Subsidiary, Parent, and Parent's shareholders, including a duty of loyalty.  Yankowitz requested that Defendant: (1) transfer back to Parent all company property, including source code and other property and systems Defendant may have developed in his capacity as Parent CTO relating to Parent's intellectual property, including, but not limited to, the IP Portfolio owned through Subsidiary; and (2) provide all communications and correspondence with respect to the Patent

///

1  Applications between Defendant and any other officer, director, shareholder or

2  employee of Subsidiary or Parent.

3      17.   Defendant Admits Patent Applications Abandoned.  On or about June

4  3, 2019, during the course of a conversation with Yankowitz, Defendant admitted

5  *for the first time* that the Patent Applications had been abandoned (contradicting

6  his earlier representations) – but conveniently failed to provide the dates the

7  applications were abandoned.  This prompted Yankowitz to immediately dispatch

8  a letter to Defendant on June 3, 2019, requesting that Defendant provide the exact

9  date each Patent Application was abandoned, the files for each Patent Application,

10  the Image File Wrappers (IFW) [6] and all of Defendant's communications with the

11  PTO.  Yankowitz further advised Defendant that because Subsidiary, not

12  Defendant, was the owner of the Patent Applications, Defendant should not

13  attempt to revive the Applications with the PTO or file any new patent application

14  which included, incorporated or referenced the subject matter of the abandoned

15  Patent Applications.

16      18.   In an apparent attempt to cover up his prior admission by further

17  misrepresenting the truth, Defendant responded to Yankowitz the following day

18  ///

19  ///

20
[6]   According to the uspto.gov, the IFW system "uses technology to replace the paper processing of patent applications in the Office. Paper components of these application files (including the specification, oath or declaration, drawings, information disclosure statements, amendments, Office actions, and file jacket notations) have been scanned to create electronic image files."

stating that the reason the Patent Applications were abandoned was because Parent had failed to raise capital:

> "I believe [the abandoned patent applications] are now and forever lost to intentional abandonment via extended non prosecution as a result of [Parent] failing to capitalize and meet its legal duty to prosecute the applications. I reject the notion that I should not file any new patent applications referring to the subject matter of the abandon[ed] patent applications."

19.    Defendant refused to cooperate by simply providing the requested information and files, and would not agree to refrain from filing any new patent applications which included the subject matter of the abandoned Patent Applications.

20.    <u>More Lies of Defendant Uncovered by Outside IP Counsel.</u>  Outside IP counsel, Mark Kendrick ("Kendrick"), retained by Parent as patent counsel to replace Defendant (who is a registered patent agent) and review and investigate the abandoned Patent Applications[7], uncovered the following information:

///

///

///

---

[7]    Kendrick became patent attorney of record of the Patent Applications in the United States Patent and Trademark Office, replacing Defendant as patent agent.

1        a.     Three of the five Patent Applications had been abandoned as a

2  result of Defendant's failure to respond to a PTO action *years before* Defendant

3  had assigned them to Subsidiary:

4               i.     Patent Application I: Abandoned **8/7/2014** because

5                      Defendant failed to pay an extra filing fee for

6                      additional claims.

7              ii.    Patent Application III: Abandoned **5/11/2017** because

8                      Defendant failed to respond to a restriction requirement.

9              iii.   Patent Application IV: Abandoned **9/8/2016** because

10                   Defendant failed to pay the filing fee and describe the

11                   drawings properly in the specification.

12        b.     The Assignments for the other two Patent Applications II and

13  V were defective.  As a result, Kendrick was unable to obtain power of attorney

14  over Patent Applications II and V in order to review the same.  Kendrick

15  eventually learned that Patent Applications II and V had also been abandoned by

16  Defendant before being assigned to Subsidiary.

17        c.     In or around October 2014, Defendant had attempted

18  unsuccessfully to revive Patent Application I by filing a petition with the PTO;

19  however, on June 30, 2015, the PTO dismissed the petition.  Because the petition

20  *///*

1  had been dismissed, it would be extremely difficult for Parent to ever successfully

2  revive Patent Application I.

3        d.    Because Subsidiary did not own the Patent Applications at the

4  time they were abandoned and because of the extended length of time that had

5  passed since abandonment, it was unlikely that Parent would be able to

6  successfully revive the Patent Applications from the Patent Applications'

7  abandoned status, requiring Parent to file new applications and take the risk that

8  others, including Defendant, may have already filed competing applications; and

9        e.    Because Defendant's practice was to file all of his Patent

10  Applications with a non-publication request, these Patent Applications are not

11  published and are not searchable on the U.S. Patent and Trademark Office

12  website.  Thus, there is no way for Parent to know whether there have been

13  intervening filings by Defendant that Defendant assigned to competing claimants.

14      21.    At no time pre-closing did Defendant disclose the above-mentioned

15  material information about the Patent Applications to Parent/Subsidiary,

16  Yankowitz, Funk or Rouf until Defendant was confronted by Yankowitz on

17  June 3, 2019.

18      22.    On July 10, 2019, Kendrick wrote to Defendant to, among other

19  things, confront him with his misrepresentations and omissions concerning the

20  Patent Applications and his attempt to mislead Yankowitz into believing that the

1   Patent Applications were abandoned as a result of Parent's failure to raise money

2   to prosecute them.  Kendrick also asked Defendant to: (i) provide a list of any

3   idea, invention and/or technology he developed while an officer of Subsidiary;

4   (ii) verify he had not filed any new patent applications that included any portion

5   of the Patent Applications or referred to and/or incorporated by reference any of

6   the disclosures therein in any document; and (iii) had no plans to file any new

7   patent applications that were directed to the same or similar subject matter as the

8   Patent Applications.

9        23.    Defendant denied that he failed to tell B4MC (now Parent) that the

10  Patent Applications were abandoned and insisted that *both* Yankowitz and Rouf

11  were somehow "confused…with the terminology related to [the] patents" as "the

12  full and true nature of the applications was fully disclosed repeatedly."  Defendant

13  had no explanation – beside a blanket denial - why he then tried to deceive

14  Yankowitz to believe that the Patent Applications were abandoned because Parent

15  failed to raise capital with which to prosecute them.  Defendant also failed to

16  comply with Kendrick's requests concerning the Patent Applications set forth in

17  paragraph 22 above.

18       24.    Plaintiffs now seek to recover from Defendant all damages that

19  Plaintiffs have incurred as a result of Defendant's fraud and omissions and further

20  seeks recovery of all stock in Parent issued to Defendant.

# FIRST CLAIM FOR RELIEF

## (Violations of Section 10(b) of the *Securities Exchange Act*, 15 U.S.C. § 78j(b)

## and Rule 10b-5, 17 C.F.R. § 240.10b-5(b)) By Parent

## Against Defendant and Does 1-10)

25.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 24 above as if fully set forth herein.

26.     Between 2013 and 2017 Defendant Page developed the IP Portfolio, including the prototype for the check-out system and the Patent Applications.

27.     Defendant Page made certain representations as to the validity and viability of the IP Portfolio before contributing the Patent Applications, among other intellectual property assets, to Subsidiary in consideration for the issuance of Subsidiary stock to Page in March of 2018.

28.     Defendant Page knew and intentionally failed to disclose to Subsidiary the following material facts:

        a.     The Patent Applications were abandoned and no longer pending *before* Page assigned them to Subsidiary;

        b.     That because the Patent Applications were already abandoned when Defendant assigned them to Subsidiary, Subsidiary would be unable to successfully revive the Patent Applications;

///

c.   In or about 2015, Page unsuccessfully attempted to revive the application for Patent I, but that petition was dismissed by the PTO on June 30, 2015.  As a result, it will be nearly impossible for Parent to revive the application for Patent I.

29.   Defendant Page made the misrepresentations and omissions directly in connection with the issuance of Subsidiary stock in consideration for Page's contribution of the IP Portfolio to Subsidiary.

30.   In addition, Defendant Page, as an Officer and Director of Subsidiary, further intentionally failed to disclose to B4MC (now Parent) the following known material facts before the reverse Acquisition transaction occurred, including:

a.   A number of the Patent Applications had been abandoned years prior;

b.   The Patent Applications were abandoned and no longer pending *before* Page assigned them to Subsidiary;

c.   That because the Patent Applications were already abandoned when Defendant assigned them to Subsidiary, Subsidiary would be unable to successfully revive the Patent Applications;

d.   In or about 2015, Page unsuccessfully attempted to revive the application for Patent I, but that petition was dismissed by the

1    PTO on June 30, 2015.  As a result, it will be nearly impossible

2    for Parent to revive the application for Patent I.

3         e.    That Subsidiary's stock was in fact worth substantially less

4               than the agreed upon valuation because the underlying assets,

5               including the Patent Applications, which were the basis for

6               Subsidiary's valuation were materially different than Page

7               represented, a fact which was also concealed from Subsidiary's

8               other shareholders and directors by Page.

9    31.    Moreover, during pre-closing discussions leading up to the reverse

10   acquisition between B4MC (now Parent) and Subsidiary, Defendant Page, as an

11   Officer and Director of Subsidiary and in his individual capacity as a shareholder,

12   made certain oral and written mispresentations, specifically including the written

13   misrepresenations concerning the IP Portfolio in the Contribution Agreement and

14   the oral misrepresentations to Yankowitz and Rouf that the Patent Applications

15   ***were pending and in the process of being examined***.  Defendant Page solely

16   knew said misrepresentations were patently false when he made them because he

17   never disclosed to Subsidiary that he was aware that the Patent Applications had

18   been <u>*abandoned*</u> by his failure to act considerably  *before* he had assigned the

19   Patent Applications to Subsidiary.

20   *///*

32.     Defendant Page made the material misrepresentations and omissions directly in connection with the sale/exchange of Subsidiary stock for B4MC (now Parent) stock in June of 2018.

33.     Defendant knew that the above-referenced statements and omissions were false and/or misleading or acted with reckless disregard as to constitute willful deceit and fraud upon Subsidiary and/or B4MC (now Parent).  Defendant had actual knowledge of the true facts and knowingly and/or deliberately misrepresented, mislead, withheld and/or concealed such material information from Subsidiary and/or B4MC (now Parent), including but not limited to the fact that: (i) Defendant was the inventor, filer, and agent of record of the Patent Applications; (ii) Defendant would have received all communications and deficiency and other notices about the Patent Applications from the PTO, and thus would have received actual that the Patent Applications had, in fact, been abandoned, as much as one year before he had assigned them to Subsidiary; and (iii) Defendant's failed petition to revive Patent Application I.

34.     At the time of Defendant's misrepresentations, Subsidiary and/or B4MC (now Parent) were ignorant of their falsity, and believed them to be true. Subsidiary and/or B4MC (now Parent) were also ignorant of the omitted facts. The misrepresentations and omissions were material in that: (i) had Subsidiary known that the misrepresentations were false and/or known of the omissions,

Subsidiary would have not issued shares of Subsidiary to Page in consideration for the IP Portfolio; and (ii) had B4MC (now Parent) known that the misrepresentations were false and/or known of the omissions, B4MC (now Parent) would not have undertaken the Acquisition by which it purchased Defendant's and the other Subsidiary shareholders' stock and sold its securities to Defendant and the other Subsidiary shareholders as the Patent Applications comprised the majority of Subsidiary's assets.

35.     Defendant Page made use of the means or instrumentalities of interstate commerce, or of the mails, in making the untrue statements of material fact to B4MC (now Parent) and/or Subsidiary, or in omitting to state material facts necessary in order to make statements made to B4MC (now Parent) and/or Subsidiary, in light of the circumstances under which they were made, not misleading.

36.     By reason of the foregoing, Defendant violated Section 10(b) of the *Securities and Exchange Act*, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

37.     As a direct and proximate result of Defendant's violations, Parent, directly and by and through Subsidiary, has suffered money damages at least in excess of $5.1 million, the exact amount of which it will prove at trial.

///

38.     As a proximate result of Defendant's fraudulent misrepresentations and omissions, and the otherwise wrongful manner in which Defendant obtain his alleged right, claim or interest in and to Parent Shares, Defendant has no legal or equitable right, claim or interest therein, but instead Defendant is an involuntary trustee holding said Parent shares in constructive trust for Parent with the duty to convey the same back to Parent forthwith under *California Civil Code* § 2224.

## SECOND CLAIM FOR RELIEF

## (Violation of *California Corporations Code* §§ 25401

## By Defendant and Does 1-10)

39.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 38  above as if fully set forth herein.

40.     In connection with the offer to issue shares of Subsidiary in consideration for contribution of the IP Portfolio to Subsidiary, Defendant intentionally made oral and/or written communications to Subsidiary, which included untrue statements of material fact or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to, statements concerning the viability and validity of the Patent Applications.

41.     In addition, in connection with the offer to sell and the actual sale of all Defendant's issued and outstanding shares of Subsidiary to B4MC (now

Parent), Defendant, as an Officer and Director of Subsidiary, and in his individual

capacity as a shareholder of Subsidiary, intentionally made oral and/or written

communications to B4MC (now Parent) as previously described above, which

included untrue statements of material fact or omitted material facts necessary in

order to make the statements made, in light of the circumstances under which they

were made, not misleading.  Such misrepresentations include, but are not limited

to, written misrepresentations in the Contribution Agreement, and oral

misrepresentations to Yankowitz and Rouf, concerning the pending status of the

Patent Applications.

42.    Subsidiary did not know the truth regarding the misrepresentations

and/or omissions of Defendant, and relied upon the same in agreeing to issue

stock to Defedndant Page in consideration for the IP Portfolio.  Had Subsidiary

known that the misrepresentations were false and of the omissions, Subsidiary

would not have issued stock to Defendant Page in consideration for the

IP Portfolio.

43.    B4MC (now Parent) did not know the truth regarding the

misrepresentations and/or omissions of Defendant, and relied upon the same in

agreeing to the Acquisition by which it purchased Defendant's and the other

Subsidiary shareholders' stock and sold its stock to Defendant and the other

Subsidiary shareholders.  Had B4MC (now Parent) known that the

1  misrepresentations were false and/or of the omissions, B4MC (now Parent) would

2  not have undertaken the Acquisition.

3       44.    Defendant knew that the above-mentioned misrepresentations and

4  omissions to Subsidiary and/or B4MC (now Parent) were false, misleading or

5  Defendant acted with such reckless disregard as to constitute willful deceit and

6  fraud upon B4MC (now Parent).  Defendant had actual knowledge of the true

7  facts and knowingly and/or deliberately misrepresented, mislead, withheld and/or

8  concealed material information from Subsidiary and/or B4MC (now Parent),

9  including but not limited to the fact that: (i) Defendant was the inventor, filer, and

10 agent of record of the Patent Applications; (ii) Defendant would have received all

11 communications and deficiency and other notices about the Patent Applications

12 from the PTO, and thus would have received actual notice or communications that

13 the Patent Applications had, in fact, been abandoned as much as one year before

14 he had assigned them to Subsidiary; and (iii) Defendant's failed petition to revive

15 Patent Application I.

16      45.    By reason of the foregoing, Defendant violated *California*

17 *Corporations Code* § 25401.

18      46.    The material misrepresentations and omissions proximately injured

19 Parent, directly and by and through Subsidiary, in excess of $5.1 million, the exact

20 amount of which will be proven at trial.

47.     As a proximate result of Defendant's fraudulent misrepresentations and omissions, and the otherwise wrongful manner in which Defendant obtain his alleged right, claim or interest in and to Parent Shares, Defendant has no legal or equitable right, claim or interest therein, but instead Defendant is an involuntary trustee holding said Parent shares in constructive trust for Parent with the duty to convey the same to Parent forthwith under *California Civil Code* § 2224.

## THIRD CLAIM FOR RELIEF

## (Fraud By Defendant and Does 1-10)

48.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 47   above as if fully set forth herein.

49.     As alleged above, Defendant made the aforementioned misrepresentations and misleading omissions of material facts to Subsidiary, knowing the misrepresentations were false and the omissions were made with the intent to deceive Subsidiary, or acting with reckless indifference to the truth or falsity of the representations, with the intention and knowledge that they would be relied on by Subsidiary in its decision to issue shares of Subsidiary to Defendant Page in consideration for the Page's contribution of the IP Portfolio to Subsidiary.

50.     As alleged above, prior to the Acquisition, Defendant, as an Officer and Director of Subsidiary and in his individual capacity as a shareholder of Subsidiary, made the aforementioned misrepresentations and misleading

1  omissions of material facts to B4MC (now Parent), knowing the

2  misrepresentations and omissions were false and with the intent to deceive B4MC

3  (now Parent), or acting with reckless indifference to the truth or falsity of the

4  representations, with the intention and knowledge that they would be relied on by

5  B4MC (now Parent) in its decision to participate in the Acquisition by purchasing

6  Subsidiary's outstanding and issued stock and selling a majority of B4MC's (now

7  Parent's) outstanding and issued stock to Subsidiary.

8      51.    Subsidiary did not know the truth regarding the misrepresentations

9  and/or omissions of Defendant, and relied upon the same in agreeing to issue

10  stock to Defedndant Page in consideration for the IP Portfolio.  Had Subsidiary

11  known that the misrepresentations were false and of the material facts that were

12  not disclosed, Subsidiary would not have issued stock to Defendant Page in

13  consideration for the IP Portfolio.

14      52.    B4MC (now Parent) did not know the truth regarding the

15  misrepresentations and/or omissions of Defendant, and relied upon the same in

16  agreeing to the Acquisition by which it purchased Defendant's and the other

17  Subsidiary shareholders' stock and sold its stock to Defendant and the other

18  Subsidiary shareholders.  Had B4MC (now Parent) known that the

19  misrepresentations were false and/or of the omissions, B4MC (now Parent) would

20  not have undertaken the Acquisition.

53.     Defendant knew that the above-mentioned misrepresentations and omissions to Subsidiary and/or B4MC (now Parent) were false, misleading or Defendant acted with such reckless disregard as to constitute willful deceit and fraud upon Subsidiary and/or B4MC (now Parent).  Defendant had actual knowledge of the true facts, both as an individual and as an Officer and Director of Subsidiary, and knowingly and/or deliberately misrepresented, mislead, withheld and/or concealed material information from Subsidiary and/or B4MC (now Parent), including but not limited to the fact that: (i) Defendant was the inventor, filer, and agent of record of the Patent Applications; (ii) Defendant would have received all communications and deficiencies and other notices about the Patent Applications from the PTO, and thus would have received actual notices of communications that the Patent Applications had, in fact, been abandoned as much as one year before he had assigned them to Subsidiary; and (iii) Defendant's failed petition to revive Patent Application I.

54.     Defendant made the misrepresentations and materially misleading omissions, and conducted such concealment of the truth concerning the omissions, to Subsidiary with the intention of inducing Subsidiary to rely thereon by issuing shares of Subsidiary to Page in consideration for the contribution of the IP Portfolio to Subsidiary.

///

55.     Subsidiary, not knowing of the truth concerning the aforesaid misrepresntations and materially misleading omissions, reliead thereon by issuing Subsidiary stock to Defendant Page in consideration for the contribution of the IP Portfolio to Subsidiary.

56.     Defendant made the misrepresentations and materially misleading omissions, and conducted such concealment of the truth concerning the omissions, to B4MC (now Parent), as an Officer and Director of Subsidiary and in his individual capacity as a shareholder, with the intention of inducing B4MC (now Parent) into participating in the Acquisition with Subsidiary.  Defendant intended all along to bait B4MC (now Parent) into the transaction by dangling the promise of potentially profitable patents which covered state-of-the art e-commerce check-out IP which in reality were valueless in order to acquire 5,000,000 shares constituting 22.5% of Parent's outstanding shares to the detriment of Parent.

57.     B4MC (now Parent), not knowing of the truth concerning the aforesaid misrepresentations and materially misleading omissions, relied thereon by participating in the Acquisition and exchanging Subsidiary's outstanding and issued stock for a majority of B4MC's (now Parent's) outstanding and issued stock.

58.     Such reliance by Subsidiary and/or B4MC (now Parent) on such misrepresentations and materially misleading omissions was reasonable especially

1  in view of Defendant's: (i) legal duties under the federal and California securities

2  laws; (ii) position as an Officer and Director of Subsidiary; and (iii) position as IP

3  agent of record on the Patent Applications.

4    59.    As a direct and proximate result of Subsidiary's and B4MC's (now

5  Parent's) respective reliance on such misrepresentations and materially misleading

6  omissions of Defendant Page, B4MC (now Parent) directly and by and through

7  Subsidiary, has been damaged in an amount subject to proof at trial.

8    60.    The aforementioned conduct of Defendant consists of intentional

9  misrepresentations, deceit and concealment of material facts known solely to him,

10  with the intention on the part of said Defendant to deprive Subsidiary and/or

11  B4MC (now Parent) of property or legal rights or otherwise cause injury to it.

12  Such actions were done to induce Subsidiary to issue shares to Page and to induce

13  B4MC (now Parent) to exchange a majority of its outstanding shares of common

14  stock in exchange for Defendant's and the other Subsidiary shareholders' shares

15  in Subsidiary.

16    61.    Accordingly, the actions of Defendant, individually and collectively

17  against Subsidiary and B4MC (now Parent), were oppressive, fraudulent and

18  malicious and justifies awarding exemplary and punitive damages to Parent,

19  sufficient to make an example of and punish Defendant, in an amount to be

20  proven at trial.

62.     As a proximate result of Defendant's fraudulent misrepresentations and omissions, and the otherwise wrongful manner in which Defendant obtain his alleged right, claim or interest in and to Parent Shares, Defendant has no legal or equitable right, claim or interest therein, but instead Defendant is an involuntary trustee holding said Parent shares in constructive trust for Parent with the duty to convey the same to Parent forthwith under *California Civil Code* § 2224.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty By Defendant and DOES 1-10)

63.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 62   above as if fully set forth herein.

64.     At all times relevant herein, Defendant served as an Officer (Treasurer) and Director of Subsidiary.  At all times relevant herein, Defendant also served as an Officer (Chief Technology Officer) and Director of Parent  post-closing of the Acquisition.  Thus, while serving in his capacity as an Officer and Director of Subsidiary and Parent, Defendant owed Subsidiary and/or Parent, statutory and common law fiduciary duties, including the duty of loyalty, which required Defendant to act in good faith and in the best interest of Subsidiary and/or Parent and their respective shareholders, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

65.     Defendant breached his respective fiduciary duties to Subsidiary and/or Parent by failing to disclose that the Patent Applications had been abandoned by Defendant before Defendant purportedly assigned those Patent Applications to Subsidiary.  Such failure to disclose prevented Subsidiary from taking steps to revive the Patent Applications pre-closing, caused Subsidiary and B4MC (now Parent) to enter into the Acquisition under false pretenses thereby exposing Subsidiary to claims of fraud, and prevented Parent from reviving and/or refiling the Patent Applications much earlier.

66.     Defendant further breached his fiduciary duties to Parent, including the duty of loyalty, by refusing to simply cooperate with Yankowitz's and Kendrick's requests on behalf of Parent to turn over basic information and files concerning the Patent Applications, including all communications with the PTO and/or shareholders, officers, directors or employees of Subsidiary or Parent.

67.     By engaging in the aforesaid conduct, Defendant failed to act in good faith and in the best interests of both Subsidiary and/or Parent, failed to act in the face of a known duty to act, and instead, placed his own personal and pecuniary interests above those of Subsidiary and/or Parent.  As such, Defendant breached his respective fiduciary duties, including the duty of loyalty and duty to act in good faith, to Subsidiary and/or Parent.

68.     As a direct and proximate result of Defendant's breach of his respective fiduciary duties to Subsidiary and/or Parent as set forth herein, Parent, directly and by and through Subsidiary, has suffered and will continue to suffer damages in the amount according to proof at the time of trial.

69.     In engaging in the above acts, in violation of his respective fiduciary duties to Subsidiary and/or Parent, Defendant acted in conscious disregard of the rights of Subsidiary and/or Parent therefore justifying an award of exemplary and punitive damages in an amount to be proven at the time of trial.

70.     As a proximate result of Defendant's fraudulent misrepresentations and omissions, and the otherwise wrongful manner in which Defendant obtain his alleged right, claim or interest in and to Parent Shares, Defendant has no legal or equitable right, claim or interest therein, but instead Defendant is an involuntary trustee holding said Parent shares in constructive trust for Parent with the duty to convey the same to Parent forthwith under *California Civil Code* § 2224.

## FIFTH CLAIM FOR RELIEF

### (Negligent Misrepresentation By Defendant and Does 1-10)

71.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 70  above as if fully set forth herein.

///

///

72.     Defendant, in his dealings with Subsidiary and B4MC (now Parent), had a duty of good faith and fair dealing.  Defendant further had a duty to Subsidiary as an Officer and Director of Subsidiary.

73.     Defendant breached his respective duties to Subsidiary and B4MC (now Parent) by making certain material misrepresentations and omitting certain material facts, as previously described hereinabove, with the intention of: (i) Subsidiary relying on the same in issuing shares of Subsidiary in consideration for the contribution of the IP Portfolio; and (ii) B4MC (now Parent) relying on the same in agreeing to the Acquisition and exchanging shares representing a controlling interest of B4MC (now Parent) for all of the shares of Subsidiary.

74.     In truth and in fact, each of the material misrepresentations and material omissions previously described hereinabove were false.

75.     Defendant failed to exercise due diligence or conduct reasonable inquiry about the truth and accuracy of his representations concerning the Patent Applications or in disclosing all material information concerning the same.

76.     As a direct and proximate result of Defendant's respective misrepresentations and omissions to Subsidiary and B4MC (now Parent), and in actual and reasonable reliance thereon, Subsidiary issued shares to Defendant Page in consideration for the contribution of the IP Portfolio to Subsidiary and B4MC (now Parent) entered into the Contribution Agreement.

77.     As a direct and proximate result of Defendant's respective misrepresentations and omissions to Subsidiary and B4MC (now Parent), Parent directly and by and through Subsidiary, has suffered and will continue to suffer damages in the amount according to proof at the time of trial.

### SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment Against Defendant and Does 1-10)

78.     Plaintiffs repeat and reallege each and every allegation above in paragraphs 1 through 77 as if fully set forth herein.

79.     As a result of the conduct alleged herein, Subsidiary was fraudulently induced to issue shares to Defendant Page in consideration for the contribution of the IP Portfolio to Subsidiary.

80.     As a result of the conduct alleged herein, B4MC (now Parent) was fraudulently induced to enter into the Contribution Agreement and consummate the reverse Acquisition for valuable consideration.

81.     Defendant has been unjustly enriched at the expense of Parent, directly and by and through Subsidiary.

82.     Parent seeks restitution from Defendant and seeks an order of this Court disgorging all profits, benefits, and other consideration obtained by Defendant as a result of Defendant's receipt of Subsidiary stock and the

///

1 acquisition of Subsidiary by B4MC (now Parent), including, but not limited to,

2 Defendant's Parent stock.

3    83.    As a proximate result of Defendant's fraudulent misrepresentations

4 and omissions, and the otherwise wrongful manner in which Defendant obtain his

5 alleged right, claim or interest in and to Parent Shares, Defendant has no legal or

6 equitable right, claim or interest therein, but instead Defendant is an involuntary

7 trustee holding said Parent shares in constructive trust for Parent with the duty to

8 convey the same to Parent forthwith under *California Civil Code* §2224.

9                    **SEVENTH CLAIM FOR RELIEF**

10    **(Violation of *California's Business & Professions Code* §§ 17200 et seq.**

11                    **Against Defendant and Does 1-10)**

12    84.    Plaintiffs repeat and reallege each and every allegation above in

13 paragraphs 1 through 83 as if fully set forth herein.

14    85.    *California's Business & Professions Code* §§ 17200 et seq., also

15 known as *California's Unfair Competition Law* ("UCL"), prohibits any "unlawful,

16 unfair or fraudulent business act or practice."

17    86.    Defendant Page at all times herein mentioned was an individual

18 doing business in the County of Los Angeles, City of Los Angeles.

19    87.    Defendant Page has violated, and continues to violate *California*

20 *Business & Professions Code* §17200's prohibition on "unfair" acts or practices

by: (i) making material misrepresentations and/or omitting material facts

concerning the validity and viability of the Patent Applications to Subsidiary prior

to contributing the same to Subsidiary in consideration for the issuance of

Subsidiary shares; (ii) failing to apprise the shareholders, officers, and directors of

Subsidiary, as an Officer and Director of Subsidiary, as to the abandonment of the

Patent Appications; (iii) making material misrepresentations and/or omitting

material facts concerning the status of the Patent Applications to B4MC (now

Parent), in his capacity as an Officer and Director of Subsidiary and in his

capacity as an individual shareholder, during B4MC's (now Parent's) due

dilingence prior to the Acquisition; (iv) failing to apprise the shareholders,

officers, and directors of Parent, as a Director of Parent, as to the abandonment of

the Patent Appications; and (v) failing to simply cooperate and turn over to Parent

basic information and files concerning the Patent Applications, including all

communications with the PTO and/or shareholders, officers, directors or

employees of Subsidiary or Parent, as repeatedly requested by Yankowitz

and Kendrick.

88.     Defendant Page has violated, and continues to violate *California

Business & Professions Code* §17200's prohibition on "unfair" acts or practices

by his failure to relinquish the shares of Parent that Defendant Page obtained

*///*

1  through his misrepresentations, omissions, and deceit of Subsidiary and/or B4MC

2  (now Parent).

3     89.    Parent, directly and by and through Subsidiary, was harmed by

4  "unfair" acts or practices in an amount to be proven at trial.

5     90.    Injunctive Relief preventing Defendant Page from disposing of his

6  Parent stock is appropriate to further prevent unfair competition under *California*

7  *Business & Professions Code* §17200 et seq.  Parent lacks an adequate remedy at

8  law, as any compensation by Page would be wholly insufficient relative to the

9  value of the Parent stock, and there is a serious risk of irreparable harm absent

10  injunctive relief.  Parent is likely to prevail on the merits of the underlying

11  controversy, and a comparison of the harm to defendant in issuing an injunction

12  versus the harm to Plaintiffs in withholding it, favors Parent.

13              **EIGHTH CLAIM FOR RELIEF**

14    **(Injuctive Relief under *California Civil Code* § 3439.07**

15              **Against Defendant and Does 1-10)**

16     91.    Plaintiffs repeat and reallege each and every allegation above in

17  paragraphs 1 through 90 as if fully set forth herein.

18     92.    Injunctive Relief preventing Defendant Page from disposing of his

19  Parent stock is appropriate to prevent the fraudulent transfer of the same under

20  *California Civil Code* § 3439.07.

93.     Parent lacks an adequate remedy at law, as any compensation by Page would be wholly insufficient relative to the value of the Parent stock, and there is a serious risk of irreparable harm absent injunctive relief.

94.     Parent is likely to prevail on the merits of the underlying controversy, and a comparison of the harm to defendant in issuing an injunction versus the harm to Plaintiffs in withholding it, favors Parent.

## NINTH CLAIM FOR RELIEF

**(Declaratory Judgment  and Injunctive Relief under *Federal Declaratory Judgments Act*, 28 U.S.C. §§ 2201–2202, and Rule 57 of the *Federal Rules of Civil Procedure* Against Defendant and Does 1-10)**

95.     Plaintiffs repeat and reallege each and every allegation above in paragraphs 1 through 94 as if fully set forth herein.

96.     This action for declaratory judgment is made pursuant to the *Federal Declaratory Judgments Act*, 28 U.S.C. §§ 2201–2202, and Rule 57 of the *Federal Rules of Civil Procedure*.

97.     An actual controversy regarding the ownership of the subject matter of the Patent Applications exists between the Parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

///

98.     This action concerns the issue of whether the Plaintiffs are the owners of the subject matter of the Patent Applications and jurisdiction is therefore proper under 28 U.S.C. § 1331.

99.     Defendant Page filed the Patent Applications, which contained confidential information.  The Patent Applications remained confidential and unavailable to the public due to the non-publication requests filed by Page with the United States Patent and Trademark Office and the subsequent abandonment of the Patent Applications (the subject matter of the Patent Applications has not been published).

100.   In or around March of 2018, Defendant Page transferred his ownership interests in the Patent Applications, and all of the underlying subject matter, to Subsidiary in exchange for shares of Subsidiary stock.

101.   On June 27, 2018, Defendant Page and Subsidiary, along with the other parties involved, executed the Contribution Agreement, which transferred 100% ownership of the stock of Subsidiary to Parent, and as such all of the ownership interests in the Patent Applications, and the underlying subject matter, held by Subsidiary at the time became the property of Parent.

102.   On or about June 4, 2019, Defendant Page represented to Yankowitz that he owned the underlying subject matter of the Patent Applications and his intent to file new patent applications utilizing the same subject matter when he

1   rejected "the notion that [he] should not file any new patent applications referring

2   to the subject matter of the abandon[ed] patent applications."

3        103.   As a result of the facts described above in the foregoing paragraphs,

4   an actual controversy of sufficient immediacy exists between the Parties regarding

5   Plaintiffs' ownership of the underlying subject matter of the Patent Applications.

6        104.   Injunctive Relief preventing Defendant Page from filing new patent

7   applications utilizing the same subject matter as the unpublished Patent

8   Applications (and the subject matter contained therein) is appropriate to prevent

9   further perpetuating the fraudulent acts committed by Page against Subsidiary

10   and Parent.

11        105.   Parent lacks an adequate remedy at law, as any compensation by

12   Page would be wholly insufficient relative to the value of the underlying subject

13   matter of the Patent Applications, and there is a serious risk of irreparable harm

14   absent injunctive relief.

15        106.   Parent is likely to prevail on the merits of the underlying controversy,

16   and a comparison of the harm to defendant in issuing an injunction versus the

17   harm to Plaintiffs in withholding it, favors Parent.

18   ///

19   ///

20   ///

# PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment against Defendant as follows:

**On the <u>FIRST (Violations of § 10(b) of the Securities and Exchange Act, etc.) AND SECOND (Violations of California Corporations Code §§ 24501 and 25501) CLAIMS FOR RELIEF</u>:**

1.     For an order declaring that Defendant hold in constructive trust for Parent all shares of Parent stock and any and all proceeds, in whatever form, Defendant has received therefrom;

2.     For compensatory and consequential damages in an amount to be proven at trial;

3.     For restitution of all consideration paid by Subsidiary for the Patent Applications and by B4MC (now Parent) pursuant to the Contribution Agreement;

4.     For prejudgment interest at the maximum legal rate;

5.     For reasonable attorneys' fees and costs of the suit incurred herein;

6.     For an order removing Defendant as officer of Parent and as an officer and director of Subsidiary;

7.     For such other and further relief as the Court deems just and proper.

///

///

///

**On the THIRD  (Fraud) AND FOURTH (Breach of Fiduciary Duty)
CLAIMS FOR RELIEF:**

8.      For an order declaring that Defendant hold in constructive trust for Parent all shares of Parent stock and any and all proceeds, in whatever form, Defendant has received therefrom;

9.      For general and special damages in an amount to be proven at trial;

10.     For exemplary and punitive damages in an amount to be proven at trial;

11.     For an award of prejudgment interest, costs of the suit, and reasonable attorneys' fees to the extent permitted by law; and

12.     For an order removing Defendant as officer of Parent and as an officer and director of Subsidiary;

13.     For such other relief as this Court deems just and proper under the circumstances.

**On the FIFTH CLAIM FOR RELIEF – (Negligent Misrepresentation):**

14.     For an order declaring that Defendant hold in constructive trust for Parent all Company shares of stock and any and all proceeds, in whatever form, Defendant has received therefrom;

15.     For general and special damages in an amount to be proven at trial;

16.     For prejudgment interest at the maximum legal rate;

17.     For reasonable attorneys' fees and costs of the suit incurred herein;

18.     For an order removing Defendant as officer of Parent and as an officer and director of Subsidiary;

19.     For such other and further relief as 1he Court deems just and proper.

**On the <u>SIXTH CLAIM FOR RELIEF (Unjust Enrichment)</u>:**

20.     For an order declaring that Defendant hold in constructive trust for Parent all Company shares of stock and any and all proceeds, in whatever form, Defendant has received therefrom.

21.     For restitution of all consideration paid by Subsidiary for the Patent Applications and by B4MC (now Parent) pursuant to the Contribution Agreement;

22.     For prejudgment interest at the maximum legal rate;

23.     For reasonable attorneys' fees and costs of the suit incurred herein;

24.     For an order removing Defendant as officer of Parent and as an officer and director of Subsidiary;

25.     For such other and further relief as the Court deems just and proper.

**On the <u>SEVENTH CLAIM FOR RELIEF (Violation of *California Business and Professions Code* § 17200 et seq.)</u>:**

26.     For a preliminary and permanent injunction, enjoining and restraining Defendant, his agents, and all other persons in active concert or privity or in participation with them, from transferring, liquidating, converting,

1  encumbering, pledging, loaning, selling, concealing, dissipating, disbursing,

2  assigning, granting a lien or security or other interest in, or otherwise disposing of

3  shares of Parent stock, or any interest therein, wherever located, including outside

4  the territorial United States, that Defendant wrongfully acquired from B4MC

5  (now Parent) and requiring Defendant to hold such shares of stock in trust for the

6  benefit of Parent until final judgment in this action;

7       27.    For restitution of all consideration paid by Subsidiary for the Patent

8  Applications and by B4MC (now Parent) pursuant to the Contribution Agreement;

9       28.    For general and special damages in an amount to be proven at trial;

10      29.    For prejudgment interest at the maximum legal rate;

11      30.    For reasonable attorneys' fees and costs of the suit incurred herein;

12      31.    For an order removing Defendant as officer of Parent and as an

13  officer and director of Subsidiary;

14      32.    For such other and further relief as the Court deems just and proper.

15  **On the <u>EIGHTH CLAIM FOR RELIEF (Injunctive Relief under</u>**

16  **<u>*California Civil Code* § 3439.07)</u>:**

17      33.    For a preliminary and permanent injunction, enjoining and

18  restraining Defendant, his agents, and all other persons in active concert or privity

19  or in participation with them, from transferring, liquidating, converting,

20  encumbering, pledging, loaning, selling, concealing, dissipating, disbursing,

assigning, granting a lien or security or other interest in, or otherwise disposing of shares of Parent stock, or any interest therein, wherever located, including outside the territorial United States, that Defendant wrongfully acquired from B4MC (now Parent) and requiring Defendant to hold such shares of stock in trust for the benefit of Parent until final judgment in this action;

34.     For restitution of all consideration paid by Subsidiary for the Patent Applications and by B4MC (now Parent) pursuant to the Contribution Agreement;

35.     For general and special damages in an amount to be proven at trial;

36.     For prejudgment interest at the maximum legal rate;

37.     For reasonable attorneys' fees and costs of the suit incurred herein;

38.     For an order removing Defendant as officer of Parent and as an officer and director of Subsidiary;

39.     For such other and further relief as the Court deems just and proper.

**On the <u>NINTH CLAIM FOR RELIEF (Declaratory Judgment and Injunctive Relief under *Federal Declaratory Judgments Act*, 28 U.S.C. §§ 2201–2202, and Rule 57 of the *Federal Rules of Civil Procedure*</u>):**

40.     For a declaration that Parent is the undivided owner of the Patent Applications and the underlying subject matter, including the non-published confidential information.

///

41.     For a preliminary and permanent injunction, enjoining and restraining Defendant, his agents, and all other persons in active concert or privity or in participation with them, from filing any patent applications with the United States Patent and Trademark Office utlilizing the underlying subject matter of the Patent Applications until final judgment in this action;

42.     For reasonable attorneys' fees and costs of the suit incurred herein;

43.     For such other and further relief as the Court deems just and proper.

## DEMAND OF JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury on all issues so triable.

Dated:      October 8, 2020              SHUMAKER MALLORY, LLP

By: _____

Clarisse Young Shumaker
Brett J. Wasserman
Lisa Hiraide
Attorneys for Plaintiffs
ROCKETFUEL BLOCKCHAIN, INC., and
ROCKETFUEL BLOCKCHAIN COMPANY